UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OSITA EMMANUEL OKOCHA,                          :
                                                :
                Plaintiff,                  :
                                                :
     -against-                                :   **MEMORANDUM & ORDER**
                                                :
TRANS UNION LLC; EXPERIAN                       :   08-CV-3107
INFORMATION SYSTEMS, INC.;                      :
EQUIFAX INFORMATION SERVICES, LLC,              :
                                                :
                Defendants.                 :
-------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

       On July 30, 2008, Osita Emmanuel Okocha ("Plaintiff" or "Okocha") commenced this action against consumer reporting agencies ("CRAs") Trans Union, LLC ("Trans Union"); Experian Information Systems, Inc. ("Experian"); and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"). Before the court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is granted in its entirety.

## BACKGROUND

       Defendants issued consumer credit reports concerning Plaintiff throughout the two-year period preceding this lawsuit, specifically July 2006–July 2008. Plaintiff has alleged that information for five accounts contained in these reports was inaccurate, and, therefore, Defendants have violated various provisions of the federal Fair Credit Reporting Act ("FCRA"), the New York FCRA, and New York common law. (*See generally* Compl.)

1

I. **Accounts Disputed by Plaintiff**

   a. <u>Sprint/Allied Interstate/Harvard Collections</u>

Prior to 2000, Mr. Okocha had long-distance phone service with either Verizon or AT&T. (Pl.'s 56.1 Statement Ex. A ("Pl.'s Dep."), 73:17–18.)  Between 2000 and 2001, Mr. Okocha received a bill from Sprint charging him for long-distance service. (*Id.* at 73.)  He claims that he was "slammed," *i.e.*, that his long-distance carrier was somehow changed to Sprint without his notification or consent. (*Id.* at 73–74.)  After allegedly consulting with rules purportedly promulgated by the Federal Communications Commission ("FCC"), Plaintiff concluded that he was not obligated to pay the debt because he "caught [it] within 30 days."[1] (*Id.* at 73:22–24.)  As a result, he did not pay the debt to Sprint.  At some point in 2005, Sprint sold the unpaid debt to Allied Interstate, Inc. ("Allied"), a collection agency.

Allied then reported to Defendants that Plaintiff owed an $83 debt for the long-distance service.  Pursuant to a dispute initiated by Plaintiff and subsequent reinvestigation, Defendants removed the Allied account from Mr. Okocha's credit report sometime before November 2006.  The debt was sold to Harvard Collection Services ("Harvard"), which newly reported to Defendants that Plaintiff owed an $83 debt on behalf of Sprint. (Declaration of Kimberly Hughes (hereinafter "Hughes Decl."), Ex. C; Declaration of Steven Newnom (hereinafter "Newnom Decl."), Ex. 6.)  Mr. Okocha later sued Harvard Collection to resolve this debt.  The matter has since been settled. (*See* Pl.'s Dep. 25:16–26:7.)

---

[1] Mr. Okocha stated in his deposition that he looked at the FCC rules and believed that "[t]he FCC rules [stated] that if you catch [the "slamming"] within 30 days, you have no obligation to pay, and this was caught within 30 days." (Pl.'s Dep. 73:22–24.)

      b. <u>HSBC Account</u>

Plaintiff opened a checking account with First Federal Bank in 1993.[2] (*Id.* at 93:9–13.) In 1996, Plaintiff applied for and received a FirstRate Credit line overdraft account. *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 371 (S.D.N.Y. 2010). Sometime within the next year, Mr. Okocha allegedly overdrew on his checking account, and incurred overdraft fees and charges on his overdraft line account. *Id.* at 372. Although Plaintiff does not dispute that he opened the overdraft account, he maintains that he did not incur any overdraft charges and, alternatively, that even if he did incur overdraft charges, he did not agree to the terms of the account. (*See id.* at 372; Pl.'s Dep. 73:7.) The bank disagreed, and, as a result, HSBC and its predecessor Marine Midland Bank, N.A. reported to Defendants that Mr. Okocha owed several thousand dollars. From time to time, HSBC has debited money from Plaintiff's HSBC checking account to pay down the balance on the overdraft account pursuant to the relevant account agreements. *See Okocha*, 700 F. Supp. 2d at 372.

In 2007, HSBC of Nevada filed suit against Plaintiff in Queens County Civil Court. *See HSBC Bank of Nev., N.A. v. Okocha*, No. 003602/07 (N.Y. Civ. Ct. filed Jan 8, 2007). Mr. Okocha filed a countersuit in the U.S. District Court for the Southern District of New York against HSBC, largely related to the automatic debiting of his checking account. Fifteen of plaintiff's nineteen claims in the federal action were dismissed on March 25, 2010. *Okocha*, 700 F. Supp. 2d at 378. On December 14, 2010, the remainder of Plaintiff's claims in the federal action were dismissed. *See Okocha v. HSBC Bank USA, N.A.*, 2010 US Dist. LEXIS 132152 (S.D.N.Y. Dec. 14, 2010).

---

[2] First Federal was bought by Marine Midland Bank, which was bought by HSBC.

      c. Macy's Account (MCYDSNB)

In September 2007, Plaintiff applied for a Macy's credit card to take advantage of an in-store discount. (Pl.'s Dep. 74:18–20.) He was approved for a credit card with a $200 credit limit. (*Id.* at 119:13–14.) Plaintiff's first bill allegedly arrived in Spanish and, therefore, Plaintiff did not pay it. (*Id.* at 74:21–22.) Despite a complaint to Macy's, a second Spanish-language bill allegedly arrived. (*Id.* at 74:24–25.) Plaintiff finally made his first payment upon receiving the third bill in English. (*Id.* at 75:2–3.) Mr. Okocha maintains that Macy's excused him from the late payments because his bills were in Spanish. (*See* Pl.'s Dep. 117:5–118:22.) As a result of these late payments, Macy's reported Mr. Okocha's account as having been paid late at least once. (*See* Hughes Decl., Ex. C–D; Newnom Decl., Ex. 8.)

      d. Municipal Credit Union Accounts

In the mid-1990s, Mr. Okocha opened several accounts—including credit cards—with Municipal Credit Union ("MCU"). Beginning in 2004, MCU reported to the Defendants that one or more of Plaintiff's accounts had been paid late at least once. (*See* Hughes Decl., Exs. A–D; Newnom Decl., Exs. 3-8.) Plaintiff maintains that he sent his payments regularly, but that MCU failed to properly credit him. (Pl.'s Dep. 112:20–24.)

      e. J.C. Penney Account (GEMBJCP)

In or around October 2006, Mr. Okocha applied for a credit card while in a J.C. Penney store. (*Id.* at 75:15–16.) He was approved for a credit card with a $300 limit. (*Id.* at 75:16–19.) Plaintiff claims he later received a letter stating that his credit card application was denied because of negative information on his credit reports. (*Id.* at 75:19–21.) Thereafter, Plaintiff

alleges that the Defendants reported his J.C. Penney account as having been paid late at least once.[3] (Compl. ¶ 67(l)(5).)

## II. Plaintiff's Complaints to Defendants and Subsequent Reinvestigation[4]

After receiving a copy of his credit report, Mr. Okocha wrote a letter on November 1, 2006, addressed to all three Defendants, stating that his "Credit Report [sic] contain [sic] erroneous information that I owe $3,351 to HSBC." (Newnom Decl., Ex. 1; Hughes Decl. ¶ 20(A).) The letter requested that Defendants "verify the accuracy of the alleged debt and if [they] could not verify it, [to] delete it from [his] record." (Newnom Decl., Ex. 1.) Attached to the letter was one page of a credit report on which the "HSBC NV" account balance was circled; a letter from John F. LeFevre at the Federal Trade Commission to Jeffrey S. Wollman regarding the reporting of medical debts; and a letter from Plaintiff addressed to HSBC Card Services dated October 6, 2006, requesting that they cease and desist collection attempts pursuant to the Fair Debt Collection Practices Act, 15 U.S.C §§ 1692–1692p, et seq. (*Id.*)

Defendant Trans Union conducted a standard reinvestigation by sending an Automated Debt Verification (ACDV[5]) form to HSBC NV—the holder of the debt as indicated in their files.

---

[3] Defendants have provided the court with declarations from their representatives and credit reports dated from October 2006 to May 2008. Each credit report shows, and each declarant categorically states, that Plaintiff's J.C. Penney's account was never reported as late. (*See* Hughes Decl.; Newnom Decl.; Willis Decl.) Plaintiff has provided no evidence, beyond his allegations, to show that this account was reported late. Because Plaintiff has produced no evidence, the court has no choice but to determine that the account was never reported incorrectly. Accordingly, summary judgment is granted for Defendants on all claims related to the J.C. Penney account.

[4] This recitation of Plaintiff's complaints is derived solely from the declarations of the three Defendants' representatives. (*See* Hughes Decl.; Newnom Decl.; Willis Decl.) Plaintiff has provided no evidence of additional complaints, nor has he taken issue with these representations.

[5] An ACDV is a standard form used by the credit industry to provide an information furnisher (such as HSBC, or any of the account holders) with information regarding the consumer's dispute and to process the information furnisher's response to the dispute. (Newnom Decl. ¶ 3.) An ACDV provides all of the account information as it is currently being reported to

5

(*See id.* at Ex. 2.) HSBC NV responded by adjusting the amount outstanding and adjusting the late payment history. (*Id.* ¶ 10(b).) On November 27, 2006, Trans Union sent Plaintiff a copy of his credit report and a letter informing him of the changes and of his right to add a 100-word statement to his credit report. (*Id.* at Ex. 3.)

On November 10, 2006, Defendant Equifax initiated its reinvestigation by sending an ACDV to HSBC containing all the relevant information regarding the dispute. (Declaration of Lisa Willis (hereafter "Willis Decl.") ¶ 53.) On November 23, 2006, HSBC verified that the account belonged to the plaintiff. (*Id.* ¶ 54.) Equifax did not notify Mr. Okocha of the results of the reinvestigation, but instead sent a letter requesting Mr. Okocha verify his address, because the address Mr. Okocha provided did not match the address Equifax had on file. (*Id.* ¶¶ 56–57.) Mr. Okocha did not respond to this request. (*Id.* ¶¶ 56–57.)

Experian conducted its own reinvestigation and sent an ACDV to HSBC NV, through which HSBC NV confirmed Mr. Okocha's debt as reported. (Hughes Decl. ¶ 20(B).) Experian sent an updated report to Mr. Okocha on November 27, 2006, noting that he had a right to add a statement of dispute to his credit report. (*Id.* at Ex B.)

On or around February 26, 2008, Experian received a written complaint from Mr. Okocha disputing the Harvard account and stating, "Please be advised that I do not owe any money to SPRINT [sic]. The information that you have included in my credit profile is inaccurate." (Nnebe Decl., Ex. 12.) Additionally, Plaintiff attached one page of an undated Experian credit report, showing the Harvard account. (*Id.*) In response to this dispute, Experian sent an ACDV

---

the CRA, and several areas where both the CRA and information furnisher can enter information in a free-form manner. (*Id.*)

to Harvard, Macy's, and MCU.[6]  Harvard, Macy's, and MCU confirmed the accounts as reported. (Hughes Decl. ¶ 20(D); *see* Nnebe Decl., Ex. 13.) Experian sent Plaintiff an updated credit report on March 14, 2008, both explaining the results of their reinvestigation and notifying Plaintiff of his right to include a statement of dispute to his credit report. (Hughes Decl., Ex. C.)

Experian also forwarded Mr. Okocha's letter to Equifax, because it believed Plaintiff had claimed identity fraud with respect to the Harvard collection account. (Willis Decl. ¶ 68.) Equifax reinvestigated by sending an ACDV to Harvard. (*Id.* ¶ 69.)  Harvard responded by confirming Plaintiff's address, social security number, date of birth, and the underlying validity of the account. (*Id.* ¶ 70.)  Because Plaintiff had still not verified his address, Equifax again sent a request to Plaintiff to prove his address before sending out his results. (*Id.* ¶ 71.)  Plaintiff did not reply. (*Id.* ¶ 72.)

On or about March 12, 2008, Mr. Okocha sent a complaint letter to Trans Union, complaining that he "[did] not owe any money to SPRINT [sic]," and that "the information that [they] have included in [his] credit profile is inaccurate."[7] (Newnom Decl., Ex. 4.)  Mr. Okocha also included one page of a Trans Union credit report, where he circled the Harvard account. (*Id.*)  Trans Union sent an ACDV to Harvard, which Harvard returned confirming the debt. (*See id.* at Ex. 5.)  Trans Union sent a letter and updated credit report to Mr. Okocha on April 11, 2008, notifying him of his right to include a statement of dispute. (*Id.* at Ex. 6.)

Mr. Okocha sent a dispute letter to all three Defendants on April 17, 2008.  This letter stated that "the following information is not accurate and must be reinvestigated and deleted: (1) $83 allegedly owed to Sprint and reported by HARVARD COLLECTION [sic]; (2) $3,460

---

[6] Hughes stated that Experian received a letter disputing all three of these accounts, and therefore their reinvestigation involved all three. (Hughes Decl. ¶ 20(D).)  The letter provided to the court, however, only complained about the Harvard account. (Nnebe Decl., Ex. 12.)

[7] This appears to be the same letter received by Equifax and Experian in February.

allegedly owed to HSBC Bank; (3) Late payment to [Macy's]; (4) Late payment to Municipal Credit Union; (5) Late payment to [J.C. Penney]." (*Id.* at Ex. 7.)

Trans Union sent an ACDV to each of the disputed accounts, except the J.C. Penney account, because it was not reporting it as late. (*Id.* ¶ 12.) Harvard and MCU responded by verifying the accounts as reported. (*See id.* at Exs. 9, 12.) HSBC adjusted the outstanding balance and late payment history, while Macy's adjusted the late payment history. (*See id.* at Exs. 10–11.) Trans Union sent Mr. Okocha a letter dated May 19, 2008 informing him of the updated account information, providing him with an updated credit report, and informing him of his right to insert a statement of dispute. (*Id.* at Ex. 8.)

Experian responded by sending Mr. Okocha a letter dated April 29, 2008 stating it had recently investigated the HSBC, Macy's, and MCU accounts and had verified their accuracy, but that he could add a statement of dispute if he believed the items were inaccurate. (Hughes Decl., Ex. D.) Equifax sent ACDVs to only Harvard, HSBC, and Macy's, because it was not reporting the MCU and J.C. Penney accounts as late at the time of Mr. Okocha's request. (*See* Willis ¶¶ 77–85.) Harvard verified the account correct as reported, HSBC updated the balance reported, and Macy's adjusted the late payment history. (*See id.* ¶¶ 78–82.) Equifax sent the results of this reinvestigation to Mr. Okocha. (*Id.* ¶ 87.)

## DISCUSSION

I.  **Standards**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a

8

'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

The FCRA and the NY FCRA are interpreted in the same manner. *See Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005). Accordingly, where appropriate, the court's conclusions as to FCRA provisions also applies to the relevant companion provisions of New York's FCRA.

## II. FCRA § 1681e(b) & NY FCRA § 380-j(e)

Under the FCRA, CRAs have a duty to follow reasonable procedures to assure the maximum possible accuracy of consumer information when preparing a consumer report. 15 U.S.C. § 1681e(b). In order to maintain a cause of action under § 1681e(b), a plaintiff must show that: (1) the CRA negligently or willfully failed to follow reasonable procedures to insure the accuracy of the credit report; (2) the information was inaccurate; (3) there was an injury; and

(4) the injury was a result of a failure to follow reasonable procedures. *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994). The threshold question is whether the challenged information was inaccurate. *Id.* However, even if the information is inaccurate, a plaintiff must still present some evidence from which a trier of fact could infer that a CRA failed to follow reasonable procedures in preparing his credit report. *Id.* (citing *Stewart v. Credit Bureau, Inc.* 734 F.2d 47, 51 (D.C. Cir. 1984)).

Regarding the Harvard account, Plaintiff does not deny that he: (1) entered into a contract with a long-distance carrier; (2) made the calls leading to the charges at issue; or (3) failed to pay the charges. (*See* Pl.'s 56.1 Statement ¶ 9; Pl.'s Dep. 73.) Rather, Plaintiff argues that the information was inaccurately reported because he did not authorize the transfer of his long-distance account to Sprint and thus was not under any legal obligation to pay the debt. This is nothing more than a conclusory legal assertion that is insufficient to overcome a properly stated motion for summary judgment. *See Wadley v. Ford Motor Credit Co.*, 397 F. Supp. 2d 781 (E.D. Va. 2005) (holding that plaintiff had not properly opposed a motion for summary judgment when he incurred a debt but did not pay it because he believed that he unilaterally rescinded it and thus no longer his financial obligation).

Regarding the HSBC account, it is undisputed that Plaintiff opened an overdraft line of credit with HSBC. (*See Okocha*, 700 F. Supp. 2d. at 371; Pl.'s Dep. 93.) However, Plaintiff contends that he either did not overdraw on his account, or that he did not agree to the terms of the overdraft line of credit. Notably, Plaintiff has not provided any evidence, beyond his bare assertions, to establish that he did not owe the debt. Plaintiff could have provided statements from his HSBC accounts to show that he did not overdraw on the overdraft account or other probative evidence he received through discovery in this or his other litigations involving the

HSBC debt. Moreover, Plaintiff's argument that he did not agree to the terms of the overdraft line of credit is a collateral legal attack on the validity of the debt, which may be resolved only with HSBC, not a factual inaccuracy, and, thus, is insufficient to withstand summary judgment.

Regarding the Macy's account, Plaintiff admits that he: (1) opened a credit card with Macy's; (2) purchased items using the card; (3) did not pay the account on time because his bill was in Spanish, and, as a result, Macy's reported that the account had been paid late. (*See* Pl.'s 56.1 Statement ¶ 18; Pl.'s Dep. 117–18.) Plaintiff argues that, because Macy's allegedly excused these late payments, and directed the Defendants to delete the late payments from his profile, they should not show up on his credit report. However, Plaintiff has provided no evidence beyond his mere allegations to show that the bills were in Spanish, Macy's excused his payments, or that Macy's notified the Defendants that the information was inaccurate.

Lastly, Plaintiff has admitted that he opened one or more MCU accounts and that he incurred the debts at issue. (*See* Pl.'s Dep. 75, 112.) However, he has not provided any evidence beyond his conclusory allegations that he made any of the disputed payments on time. Therefore, there is no evidence to support Plaintiff's allegation that the MCU account was reported inaccurately, and summary judgment is appropriate. Notably, Plaintiff failed to respond to this argument in his opposition papers, apparently recognizing this shortcoming.

As discussed in more detail below, even if these accounts had been reported inaccurately, Plaintiff has failed to produce any evidence that Defendants did not follow reasonable procedures to ensure the accuracy of the information, once notified of the alleged inaccuracies. *See Whelan*, 862 F. Supp. at 829.

For these reasons, summary judgment is granted for the Defendants on Plaintiff's claims arising under the FCRA § 1681e(b) and the NY FCRA § 380-j(e).

**III.    FCRA § 1681i(a) & NY FCRA § 380-f**

The FCRA requires that a CRA reasonably reinvestigate any disputed information contained within a consumer's credit report after receiving a direct dispute from the consumer. 15 U.S.C. § 1681i(a)(1)(A). Upon receiving such a dispute, a CRA has thirty days to perform the reinvestigation and to notify the consumer of the results.

As set forth above, whether Plaintiff had a legal obligation to pay the debts reported by Harvard and HSBC turned on questions of law that Defendants could not have possibly resolved through a reinvestigation. *See Fashakin v. Nextel Commc'ns*, 2009 WL 790350, at *11 (E.D.N.Y. Mar. 29, 2009) ("No reasonable reinvestigation by Trans Union, even had it contacted Nextel to determine the status of the debt, would have resulted in the debt being removed from plaintiff's credit report."). Defendants were entitled to report on them until Plaintiff properly resolved the issues with Harvard and HSBC in a legal proceeding. *DeAndrade*, 523 F.3d at 68. With regard to Plaintiff's Macy's and MCU accounts, Plaintiff did not provide any evidence that either account was ever reported inaccurately.[8]

In any event, even if the accounts were reported inaccurately, Plaintiff has failed to produce any evidence indicating that Defendants failed to discharge their duty to reinvestigate the disputes in a reasonable manner.[9] The reinvestigation procedures used by Defendants are

---

[8] The court acknowledges that the Harvard, Macy's, and MCU accounts no longer appear adversely on Plaintiff's credit reports. However, as discussed above, Plaintiff has not provided evidence to show the information that led Defendants' to modify Plaintiff's credit report subsequent to the filing of this action was reasonably available to them at the time of the reinvestigations.

[9] In his reply memorandum, Plaintiff argued that Defendants completely failed to reinvestigate his complaints before May 2008. (Pl.'s Mem. of Law 8–9.) In making this assertion, Plaintiff relies on the declaration of Theresa Nylund, an analyst with HSBC Card Services, in which Nylund states that HSBC Bank USA, N.A. did not receive an ADCV from any of the defendants before May 2008. (*See id.*; May 8, 2009 Decl. of Theresa Nylund, 3.) However, it is undisputed that the holder of the debt in November 2006 was HSBC, N.V. and

detailed in their representatives' declarations. Each Defendant: (1) reviewed the dispute letters and all enclosures; (2) if the enclosures were not sufficient to resolve the dispute, sent an ACDV to the furnisher with a dispute code and information to identify properly the consumer's dispute; (3) once the furnisher returned the ACDV, modified the consumer's account accordingly, including deleting the account if the furnisher failed to return the ACDV or verify it appropriately. (*See* Hughes Decl. ¶¶ 11–16; Newnom Decl. ¶¶ 4–5; Willis Decl. ¶¶ 13–20.) As discussed above, Defendants, without exception, sent ACDVs to Harvard, HSBC, Macy's, and MCU each time Plaintiff complained that his accounts were incorrectly reported. (*See* Hughes Decl.; Newnom Decl.; Willis Decl.) Moreover, within thirty days of having received each of Plaintiff's disputes, the uncontroverted evidence presented to the court shows that Defendants updated each account according to the information in received from the furnishers. (*See* Hughes Decl.; Newnom Decl.; Willis Decl.) Lastly, each Defendant notified Plaintiff in some manner either of the results, or that they could not notify him of the results until he verified his account information. (*See* Hughes Decl.; Newnom Decl.; Willis Decl.)

Additionally, Plaintiff's dispute letters sent during the relevant time period contained little more than categorical disputes as to the validity of the debt. (Nnebe Decl., Exs. 10, 12, 14.) Thus, Plaintiff did not raise any significant factual challenge to the accuracy or reliability of the original source of the reported information, nor did he make any actual allegations of fraud. (*Id.*) Under these circumstances, the procedure followed by Defendants is reasonable as a matter of law. *See Fashakin v. Nextel Communs.*, 2009 U.S. Dist. LEXIS 25140, at *34–42 (E.D.N.Y. Mar. 25, 2009) ("Where the consumer has given the consumer reporting agency no reason to

---

that Defendants sent their ACDVs to HSBC, N.V. an affiliate of HSBC Bank USA, N.A. and not to HSBC Bank USA, N.A. itself. (*See* Hughes Decl.; Newnom Decl., Ex. 2; Willis Decl. *See also* Feb. 19, 2010 Decl. of Theresa Nylund.)

question the accuracy of the initial information provided by the subscriber, the consumer reporting agency fulfills its obligation to reasonably reinvestigate by confirming the accuracy of the debt with the creditor." (citing *Podell v. Citicorp Diner's Club, Inc.*, 914 F. Supp. 1025, 1032 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997))); *cf. Gorman v. Experian Info. Solutions, Inc.*, 2008 U.S. Dist. LEXIS 94083, at *15 (S.D.N.Y. 2008) ("Plaintiff sent a copy of his Grant Deed in Lieu of Foreclosure, as well as a detailed letter explaining the inaccuracies, to Experian in connection with its investigation."). Therefore, summary judgment is granted as to Plaintiff's claims arising under the FCRA § 1681i(a) and the NY FCRA § 380-f.

### IV.     FCRA § 1681i(a)(5)(B) - (C)

The FCRA mandates that disputed information must be deleted from a consumer's credit report if it cannot be verified pursuant to a reinvestigation. *See* 15 U.S.C. § 1681i(a)(5)(A)(i). If a CRA wants to reinsert previously deleted information into a consumer's credit report, it must certify the accuracy of the information with the information furnisher, and must notify the consumer of the reinsertion. *Id.* § 1681i(a)(5)(B). Moreover, a CRA is required to maintain reasonable procedures designed to prevent such previously deleted information from being reinserted into a consumer's credit report. *Id.* § 1681i(a)(5)(C).

Plaintiff relies primarily on *Spector v. Trans Union, LLC*, 301 F. Supp. 2d 231 (D. Conn. 2004), in arguing that Defendants violated the FCRA when they reinserted an $83 debt reported by Harvard (which was initially reported by Allied) into his credit report in 2007. (Pl.'s Mem. of Law 7.) In *Spector*, the court denied summary judgment for defendant CRAs when a second furnisher reported an inaccurate account that had been deleted by a first furnisher, given that the account numbers were the same and the CRA was aware that the original furnisher sold its accounts to the second furnisher. *See Spector*, 301 F. Supp. 2d at 235–36.

Defendants, however, rely on *Jordan v. Trans Union, LLC*, 2006 WL 1663324 (N.D. Ga. June 12, 2006). In *Jordan*, the court granted summary judgment for defendant CRAs where a previously deleted account was reinserted after being reported with a different account number by the *same* furnisher. The court held that, because the account number was different, the "reappearance" did not constitute a reinsertion of previously deleted materials, even though the new account was indisputably the same debt as that which was previously deleted. *See id.* at *6.

The case at bar is more analogous to the situation in *Jordan* than *Spector*. Here, not only were the accounts provided by two different furnishers, but the account numbers associated with the debts were completely different. (*E.g.*, Newnom Decl., Ex. 3 (showing Allied account ending in 2035), Ex. 6 (showing Harvard account ending in 0869).) Regardless of the set of procedures utilized, it would have been extremely difficult for the Defendants to know that the Harvard account was related to the previously deleted Allied account. As such, the Harvard account's appearance in Plaintiff's credit report does not constitute a reinsertion of previously deleted information. Consequently, summary judgment is granted for the Defendants on these claims.

### V.     FCRA §§ 1681h(c), 1681i(a)(6)(A), 1681i(c) & NY FCRA § 380-j(a)(3)

Several claims advanced in the Complaint were not addressed by Plaintiff in his Memorandum in Opposition to Defendants' motion. The court now turns to those claims.

   a. FCRA § 1681h(c)

Under the FCRA, CRAs are also required to "provide trained personnel to explain to the consumer any information furnished to him [through a consumer credit report]." 15 U.S.C. § 1681h(c). A CRA is not required to keep trained personnel on staff twenty-four hours a day, but instead is required to provide trained personnel after receiving reasonable notice from a consumer. *Guimond v. Credit Bureau Inc.*, 1992 WL 33144, at *3 (4th Cir. Feb. 25, 1992).

Plaintiff has admitted that he never contacted any of the three Defendants to have his credit report explained to him. (Pl.'s Dep. 15:17–20.) Therefore, summary judgment is granted in favor of Defendants.

    b. <u>FCRA § 1681i(a)(6)(A)</u>

Pursuant to § 1681i(a)(6)(A), a CRA is required to send a notice to a consumer following completion of reinvestigation of disputed information. This notification must include "a notice that the consumer has the right to add a statement to [his] file disputing the accuracy or completeness of the information . . . ." *Id.* § 1681i(a)(6)(B). All correspondence Defendants sent to Plaintiff, included a statement informing Plaintiff of his right to file a statement disputing the information on his credit report. (Hughes Decl., Exs. A–D; Newnom Decl., Exs. 3-6, 8.) Although Equifax failed to send Plaintiff notification of its reinvestigation, it was entitled to require proof of proper identification under § 1681h(a)(1) before doing so, and Plaintiff failed to comply with repeated requests for such information. *See Heupel v. Trans Union, LLC*, 193 F. Supp. 2d 1234, 1238 n.7 (N.D. Ala. 2002). Accordingly, summary judgment is granted on this claim.

    c. <u>FCRA § 1681i(c)</u>

Section 1681i(c) provides that, if a consumer files a statement disputing information on his credit report, a CRA must note on the consumer's credit report that the information has been disputed and provide the statement or a clear summary thereof. This section does not require a CRA to provide a statement of dispute unless one is provided to it. *Spector v. Equifax Info. Servs.*, 338 F. Supp. 2d 378, 386 (D. Conn. 2004). Plaintiff has produced no evidence to show that he provided Defendants with a statement of dispute. Defendants could not possibly have included it in his credit report. Accordingly, summary judgment is granted on this claim also.

  d. <u>NY FCRA § 380-j(a)(3)</u>

Lastly, NY FCRA § 380-j(a)(3) states that: "No consumer reporting agency shall report or maintain in the file on a consumer, information which it has reason to know is inaccurate." As discussed throughout this decision, Plaintiff has not provided any evidence whatsoever to show that the information in his account was inaccurate at the time it was reported or that, if it was, Defendants had any documented reason to know it was inaccurate. Therefore, summary judgment is granted on this claim as well.

**VI. N.Y. Common Law Claims**

Plaintiffs' claims for defamation, invasion of privacy, false light and negligence are governed by 15 U.S.C. § 1681h(e), which provides in relevant part as follows:

> [N]o consumer may bring any action or proceeding *in the nature of defamation, invasion of privacy, or negligence* with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, except as to *false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added).

Plaintiff does not respond squarely to Defendants' claim of qualified immunity under this statute. However, he does address willfulness in the context of the FCRA violations, and argues that the Defendants showed reckless disregard for the FCRA requirements (and consequently, willfulness justifying punitive damages) by: (1) deleting the Allied account after reinvestigation and subsequently inserting the Harvard account; (2) failing to investigate Plaintiff's November 2006 dispute regarding his HSBC account; (3) Experian's alleged failure to reinvestigate his April 2008 dispute until December 2008;[10] and (4) failing to delete the late payment history on

---

[10] Plaintiff cites to the Declaration of Theresa Nylund to show that Experian did not reinvestigate his April 2008 dispute with HSBC until December 2008. (*See* Pl.'s Mem. of Law

17

his Macy's account despite a directive from Macy's to that effect. (Pl.'s Mem. of Law 12–13.) As discussed above, Plaintiff has provided no evidence to support these allegations.

Moreover, assuming *arguendo* that Plaintiff raised a genuine issue as to "false information," the record is devoid of any evidence that the information was furnished with malice or willful intent to injure him. On the contrary, as discussed in greater detail above, the procedures Defendants utilized were reasonably calculated to assure accuracy in the credit reports it produced. Thus, these state common law claims are pre-empted by the federal FCRA and are dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2011

/s/
DORA L. IRIZARRY
United States District Judge

---

8.) This comports with the Declaration of Kimberly Hughes stating that Experian did not reinvestigate this dispute, because it was a duplicate dispute. (*See* Hughes Decl. ¶ 20(F).) Pursuant to 15 U.S.C. § 1681i(a)(3), a consumer reporting agency may choose not to reinvestigate a dispute if it reasonably determines it to be "frivolous," provided it notifies the consumer of such notification. It is undisputed that Experian notified Plaintiff of this determination on May 28, 2008. (*Id.*)